# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

Demetriest A. D.,

       Plaintiff,

    v.

Frank Bisignano, Commissioner of Social Security,

       Defendant.

Case No. 2:25-cv-00805-DJA

**Order**

Before the Court is Plaintiff Demetriest A. D.'s motion for reversal and remand of the Administrative Law Judge's ("ALJ") decision regarding her Social Security appeal. (ECF No. 10). Also before the Court is the Commissioner's brief in response, asking the Court to affirm (ECF No. 12). Plaintiff filed a reply. (ECF No. 13). Because the Court finds that certain of the ALJ's reasons for rejecting Plaintiff's testimony are not clear and convincing, but that others are, it grants Plaintiff's motion in part and denies it in part. The Court finds these matters properly resolved without a hearing. LR 78-1.

## BACKGROUND

### I.    Procedural history.

Plaintiff filed an application for a period of disability and disability insurance benefits on August 11, 2021, alleging disability commencing June 1, 2021.[1] (ECF No. 10 at 3). The Commissioner denied the claim by initial determination on June 17, 2022, and denied reconsideration on February 7, 2023. (*Id.*). Plaintiff requested a hearing before an ALJ and on May 22, 2024, ALJ Kathleen Kadlec published an unfavorable decision. (*Id.*). Plaintiff requested that the Appeals Council review the decision on June 13, 2024, and the Appeals Council denied

---

[1] Plaintiff amended her alleged onset date to January 21, 2022. (AR 535).

the request for review on March 27, 2025, on which date the ALJ's decision became the final decision of the Commissioner.  (*Id.*).  Plaintiff then timely filed the instant civil action.

## II.    The ALJ decision.

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).  (AR 62-78).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 21, 2022, the amended alleged onset date.  (AR 64).  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, scoliosis, migraines, and cervical spondylosis.  (AR 64).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 67).  In making this finding, the ALJ considered all medical listings, including listings 1.15, 1.16, and 11.02.  (AR 67-68).

At step four, the ALJ found that Plaintiff,

> has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) except that the claimant could stand and walk for 6 hours each to total no more than 6 hours standing/walking in an 8-hour workday[2], occasional overhead reaching and frequent reaching in other directions, occasional climbing of ladders[3], ramps, stairs, kneeling, crouching, and crawling, and frequent stooping.  The claimant cannot work at unprotected heights, can have no more than occasional exposure to moving mechanical parts, motor vehicle operation, non-atmospheric extremes of cold and heat, and vibrations.  There are no sitting limitations.

(AR 68).

In making the step four finding, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely

---

[2] The ALJ included the following footnote here: "*See also* SSR 83-10."

[3] The ALJ included the following footnote here: "No climbing of ropes or scaffolds."

consistent with the medical evidence and other evidence in the record.  (AR 69).  In drawing this conclusion, the ALJ first summarized Plaintiff's testimony as follows:

> The claimant alleges disability due to severe pain upon sitting, standing, or walking long distances, migraines, severe neck pain, shoulder pain, lower back pain, tarsal tunnel in her feet, and an inability to work while taking prescribed pain medication and muscle relaxers…She has reported extreme difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing…She has also reported that severe back pain prevents her from sweeping floors, bending over to clean, vacuuming, washing her child's hair, and washing the dishes…
>
> At the hearing, the claimant testified that typing causes her back to have a burning sensation and hurts her neck related to surgeries she has had on both her back and her neck. The claimant further testified that she has tried epidural injections, radiofrequency ablation, and surgeries that provided only temporary relief with worsening symptoms. The claimant finally testified that she has difficulties standing, walking, and sitting, and can only sit for 10-15 minutes before her back starts to tighten, then she will need to walk around and stretch her back before laying down for 30 minutes. The claimant can stand on her feet for 10-15 minutes, cannot lean over to grab things, and cannot lift anything over 10 pounds. The claimant's neck pain limits her ability to look at a computer screen for longer than 15 minutes off and on for 2-3 hours total in an 8-hour workday.
>
> As for activities, the claimant testified that she stays in her pajamas all day sometimes, that she tries to do chores including dishes, laundry, and light housework, and that she elevates her feet 2- 3 times per week pursuant to her doctor's recommendation.

(AR 68-69).

At step five, the ALJ found that Plaintiff is capable of performing past relevant work as a billing clerk, administrative clerk, personnel clerk, and benefits clerk II.  (AR 75).  The ALJ further relied on the testimony of the vocational expert, who opined that Plaintiff could perform the requirements of representative occupations such as a router, routing clerk, and order caller. (AR 76).  Accordingly, the ALJ found that Plaintiff had not been disabled since January 21, 2022, through the date of the decision, May 22, 2024.  (AR 77).

**STANDARD**

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides."  The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*.  *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  When the evidence will support more than one rational interpretation, the court must defer to the

Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

## DISABILITY EVALUATION PROCESS

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).[4] If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic

---

[4] 20 C.F.R. § 404 addresses federal old-age, survivors, and disability insurance while 20 C.F.R. § 416 addresses supplemental security income for the aged, blind, and disabled. However, the five-step evaluation process under either section is the same.

work activities.  20 C.F.R. § 404.1520(c); 20 C.F.R. § 920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.  20 C.F.R. § 404.1521; 20 C.F.R.§ 920(c); *see also* Social Security Rulings ("SSRs") 85-28.   If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526; 20 C.F.R. § 416.920(a)(4)(iii).  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509; 20 C.F.R. § 416.909), then a finding of disabled is made.  20 C.F.R. § 404.1520(h); 20 C.F.R. § 416.920(a)(4)(iii).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; 20 C.F.R. § 416.945; *see also* SSR 16-3p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.913(a)(2).

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(a)(1)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565; 20 C.F.R. § 416.960(b)(1)(i). If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(a)(4)(v). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

## ANALYSIS AND FINDINGS

Plaintiff argues that the ALJ erred by not providing clear and convincing reasons for rejecting Plaintiff's testimony and therefore, the ALJ's decision is not supported by substantial evidence. (ECF No. 10). Plaintiff breaks this argument down into four parts, corresponding to each of the reasons she claims the ALJ provided for rejecting her testimony: (1) that there was a lack of objective medical evidence to support Plaintiff's testimony; (2) that Plaintiff's treatment was effective; (3) that the treatment that Plaintiff received and her reporting during that treatment were inconsistent with debilitating limitations; and (4) that Plaintiff's activities of daily living were inconsistent with her claims of debilitating limitations. (*Id.*). The Court first outlines the legal standard applicable to Plaintiff's argument and then addresses each sub-argument in turn.

**I.    Legal standard.**

The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony not credible.  42 U.S.C. § 423(d)(5)(A) (explaining that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability" absent additional findings).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms.  *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

Because the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based," the agency must explain its reasoning. *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-102 (9th Cir. 2014).  The Ninth Circuit thus requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines the testimony."  *Treichler*, 775 F.3d at 1102 (citing *Bunnell*, 947 F.2d at 346 and *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).  That means "[g]eneral findings are insufficient."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (superseded on other grounds); *see Holohan*, 246 F.3d at 1208 (concluding "that the ALJ's credibility determination was erroneous" because it was based on the ALJ's characterization of "the 'record in general'").

"An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review."  *Treichler*, 775 F.3d at 1103. (internal quotations omitted). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by

substantial evidence." *Id.* It is not enough for an ALJ to state their non-credibility conclusion and then summarize the medical evidence for their RFC determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). On the other hand, the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 680–81 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959; *Perez v. Astrue*, 247 F.App'x 931, 934 (9th Cir. 2007) (unpublished).

## II.   Discussion.

### A.   *Whether the ALJ erred by rejecting Plaintiff's testimony due to its inconsistency with the record.*

Plaintiff first argues that the ALJ erred by stating that Plaintiff's testimony was inconsistent with the record, without explaining which evidence was inconsistent with which testimony and why. (ECF No. 10 at 7-8). Instead, Plaintiff asserts that the ALJ simply recited the medical evidence in support of her RFC. (*Id.*). Plaintiff adds that the ALJ's statements that the record lacks evidence to support Plaintiff's testimony are contradicted by the ALJ's finding that Plaintiff had severe impairments that "could reasonably be expected to cause the alleged symptoms." (*Id.*) (citing AR 69).

In response, the Commissioner argues that the ALJ properly found that the objective medical evidence did not entirely support Plaintiff's allegations. (ECF No. 12 at 8). The Commissioner points out that the ALJ found Plaintiff's neck complaints to be inconsistent with imaging showing only mild issues with her cervical spine before and after her surgeries and largely moderate findings in her lower spine. (*Id.* at 8-9). The Commissioner also argues that Plaintiff regularly demonstrated normal strength and sensation in her records. (*Id.*).

In reply, Plaintiff argues that the Commissioner has relied on a few static images to show that her neck problems were not commensurate with her complaints and ignores the fact that Plaintiff ultimately required a second cervical spine surgery due to her ongoing pain. (ECF No. 13 at 8). Plaintiff adds that, in arguing that Plaintiff's imaging following her second cervical spine surgery was unremarkable, the Commissioner cites to an x-ray that *predated* her second

surgery. (*Id.*). Plaintiff also points to records following her second surgery in which imaging showed ongoing cervical spine issues and to records showing that Plaintiff continued aggressive treatment in the form of branch blocks and epidural injections following her second surgery. (*Id.* at 8-9).

Here, the Court does not find that the ALJ erred by simply reciting the medical evidence in rejecting Plaintiff's testimony. While the ALJ did summarize the medical evidence, she also explained which portions of that evidence undermined which portions of Plaintiff's testimony and supported the RFC. For example, the ALJ noted that although Plaintiff "reports difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks…which she says exacerbates her neck and back pain, she also reported to her treatment provider in February 2023 that bike riding is something that she can usually tolerate, but that lately she had only been able to ride for 20 minutes before needing to rest due to back pain." (AR 73). The ALJ also pointed out that Plaintiff's doctor encouraged her to do a home exercise plan, which is inconsistent with Plaintiff's reports of difficulty with most movements and tasks. (AR 73). The ALJ referenced records showing that at the majority of her examinations Plaintiff did not present in any distress, "which is not consistent with any sitting limitation...Nor is there any indication of the need to elevate her feet above waist height or difficulty with computer use." (AR 73). This contradicted Plaintiff's testimony that she elevates her feet pursuant to a doctor's recommendation and that she cannot look at a computer screen for longer than 15 minutes on and off and for 2-3 hours total in an 8-hour workday. (AR 69). The ALJ also determined that certain evidence was consistent with Plaintiff's testimony. The ALJ explained that "[c]onsistent with the evidence that indicates pain but also pain relief given presentations for refills with some additional relief from denervations and the claimant's reporting as to the effectiveness of [B]otox and her neck surgery, the claimant reportedly has the ability to drive, prepare her own meals, complete household chores including laundry and dishes, grocery shop, and to ride a bike." (AR 73). The Court therefore does not find that the ALJ simply recited the medical evidence or simply found that there was a lack of objective medical evidence to support Plaintiff's testimony when rejecting that testimony. The Court thus denies Plaintiff's motion to remand on this ground.

**B.      *Whether the ALJ erred by rejecting Plaintiff's testimony based on the effectiveness of Plaintiff's treatment.***

Plaintiff next argues that the ALJ erred by using Plaintiff's effective treatment as a reason to reject Plaintiff's testimony.  (ECF No. 10 at 8).  Plaintiff claims that the records really reflect that her treatment was not effective.  (*Id.*).  She points first to her neck surgery, explaining that the ALJ's statement that Plaintiff's "neck symptoms responded well to surgical intervention," is contradicted by records showing Plaintiff reporting pain after her first and her second surgery.  (*Id.* at 8-9).  She adds that she would not have required a second cervical spine surgery at all if the first was successful.  (*Id.*).  Plaintiff also points to records from September and October of 2024—which records post-dated the ALJ's decision but that Plaintiff submitted to the Appeals Council—showing that her second surgery was not successful and that she failed to improve as expected.  (*Id.* at 10).  Plaintiff points next to her pain management regimen, arguing that it is not proof that her symptoms were well managed as the ALJ asserted, but that it demonstrates that medication did not sufficiently alleviate her pain.  (*Id.* at 10).  Plaintiff argues that, while the ALJ stated that Plaintiff "consistently reported to Dr. [Alain] Coppel that her medication was keeping her symptoms stable and keeping her functional," the notations to which the ALJ cites are "in the context of [Plaintiff] still reporting aggravating factors of her pain to include lumbar motion, being in one position for prolonged periods of time especially prolonged sitting or standing, lifting, household chores, forward bending, sleeping, or twisting."  (*Id.* at 10-11).  Plaintiff argues that the ALJ ignored that, while Plaintiff improved with medication, that did not mean that she was capable of functioning in the workplace.  (*Id.*).  In support of this argument, Plaintiff points to some pain treatment records from January 2023 until September of 2023 in which she complained of increased pain with normal daily activities.  (*Id.*).  Plaintiff points next to her lumbar pain, which she asserts required intense treatment like radiofrequency denervation and facet blocks over many years, which treatment only provided temporary relief.  (*Id.* at 12).

In response, the Commissioner argues that Plaintiff's own reports to her medical providers indicated that her treatment was more effective than her brief claims.  (ECF No. 12 at 5).  Regarding both Plaintiff's pain management and her neck surgeries, the Commissioner argues

that Plaintiff consistently reported that her medications kept her functional with stable symptoms between May of 2022 and January of 2023. (*Id.*). And about a month later, Plaintiff's doctor noted that imaging showed her cervical spine had an "excellent construct" and that her fusion was "clinically stable." (*Id.*). The Commissioner adds that Plaintiff's reference to records from September and October of 2024 showing certain issues with Plaintiff's cervical spine surgery do not indicate that the ALJ's decision—which was only that Plaintiff was not disabled through May 22, 2024—was not supported by substantial evidence. (*Id.* at 7). This is because, the Commissioner asserts, it was not until September of 2024, about four months after the ALJ's decision, that Plaintiff's imaging showed worsening of her condition. (*Id.*). Regarding Plaintiff's lumbar pain, the Commissioner points to Plaintiff's report that radiofrequency denervation improved her pain in May of 2023 and Plaintiff's decision not to undergo surgery for her lumbar pain. (*Id.* at 6). The Commissioner asserts that the ALJ reasonably found that Plaintiff had responded well to treatment and that Plaintiff's arguments offer a reinterpretation of the record. (*Id.*). For example, the Commissioner points out that Plaintiff focuses on only one part of an October 26, 2023, treatment note in which Plaintiff's surgeon reported that Plaintiff was having severe pain in her right trapezius and a sharp pain in her left scapula three months post-surgery. (*Id.*). But the Commissioner asserts that, really, the ALJ considered the note at length finding that it showed that Plaintiff had reported that she was doing well, that her doctor had made few significant findings and only suggested following up with pain management regarding possible trigger point injections. (*Id.*).

In reply, Plaintiff reiterates regarding her pain management regimen that her records show that even while she reported stable pain, she also reported that her pain was aggravated by the same types of movements she descried in her testimony—such as being in one position for prolonged periods of time, sitting, standing, lifting, household chores, forward bending, sleeping, and twisting—as being difficult for her. (ECF No. 13 at 5). So, she argues, her records were not inconsistent with her testimony and her improvement was not consistent with competitive work. (*Id.*). Plaintiff adds that the Commissioner ignores that after January of 2023, Plaintiff's records show that her pain escalated and, with respect to her lumbar pain, required radiofrequency

denervations and lumbar facet blocks, and with respect to her cervical pain, required a second surgery, epidural injections, and branch blocks. (*Id.* at 6). Given this evidence, including the September and October of 2024 records revealing that Plaintiff did not improve as expected after her second cervical surgery, Plaintiff asserts that the longitudinal evidence does not support the ALJ's characterization of her treatment as "effective." (*Id.*). And so, Plaintiff argues that this was not a clear and convincing reason to discredit her testimony. (*Id.*).

Here, the Court is persuaded by Plaintiff's argument that the ALJ erred by finding that Plaintiff's neck symptoms responding well to surgical intervention was a reason to reject Plaintiff's testimony. However, the Court is not persuaded by Plaintiff's other arguments. So, the Court grants Plaintiff's motion in regard to her argument regarding her neck symptoms only. The Court remands the issue to the ALJ to consider records Plaintiff submitted to the Appeals Council that post-date the ALJ's decision, which records appear inconsistent with the ALJ's statement that Plaintiff's neck symptoms responded well to surgical intervention.

Turning first to Plaintiff's neck surgery, as a preliminary matter, Plaintiff's March 15, 2019, cervical spine surgery was on Plaintiff's C4-5, C5-6, and C6-7 vertebrae while Plaintiff's July 12, 2023, cervical spine surgery was on Plaintiff's C3-4 vertebrae. *Compare* (AR 2216) (discussing Plaintiff's March 15, 2019, surgery) *with* (AR 2209) (discussing Plaintiff's July 13, 2023, surgery). So, just because Plaintiff had two surgeries on her cervical spine does not, by itself, mean that her first surgery was unsuccessful because her first surgery was on different parts of her cervical spine than her second. Additionally, it is not clear to the Court that the ALJ ignored Plaintiff's reports of pain following her two surgeries when concluding that Plaintiff's symptoms responded well to surgical intervention. Instead, the ALJ first considered imaging of Plaintiff's cervical spine, which showed mild and moderate findings following her surgeries. (AR 69-70). The ALJ then considered Plaintiff's reports to Dr. Tia Sams, Dr. Robert Balsiger, and Dr. Andrew Volin of pain in her neck. (AR 70-71) (citing AR 1269-72, 1355, 1357, 1701, 1703, 1704). However, the ALJ also noted that those doctors assessed Plaintiff to be in no acute distress with largely normal examination findings. (AR 70-71). The ALJ also considered the reports of Plaintiff's surgeon, Dr. Gary Flangas prior to her second surgery assessing that Plaintiff

was in no acute distress, with normal gait, normal station, and normal range of motion except for the neck. (AR 71) (citing 1742). The ALJ referenced Plaintiff's records following her second surgery as well—including the October 26, 2023, record—and found that while Plaintiff reported pain to her providers, Dr. Flangas and Dr. Carol Hungerford, both noted that she was not in acute distress, while Dr. Flangas found the fusion surgery to be successful, found Plaintiff to be stable, and advised Plaintiff to continue a home exercise program. (AR 71-72) (citing AR 1782, 2207, 2251). So, the Court finds that the ALJ did not ignore Plaintiff's reports of pain, but considered them in context.

However, the Court is persuaded by Plaintiff's argument that the ALJ's statement that Plaintiff's symptoms responded well to surgical intervention is not supported by substantial evidence when considering Plaintiff's records post-dating the ALJ's decision. The Court must consider this evidence as part of the administrative record. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159–60 (9th Cir. 2012) (holding that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence"). The records include imaging showing lack of osseous fusion at C6-7, loosening of C3 screws, and no solid osseous fusion at C3-4. (AR 108-109). Reviewing those images, Plaintiff's surgeon Dr. Flangas concluded that "there are postoperative changes from C3 to C7," noted that Plaintiff has complaints of neck pain, and found that "[c]linically the patient has failed to improve as expected." (AR 110). Considering these records along with Plaintiff's prior reports of pain and prior imaging showing mild changes to her cervical spine directs the inference that Plaintiff's surgical interventions deteriorated over time. So, the Court finds that the ALJ's assertion that Plaintiff's symptoms responded well to surgical intervention was not a clear and convincing reason to reject Plaintiff's symptom testimony. The Court therefore grants Plaintiff's motion to remand on this issue.

Turning next to Plaintiff's pain management regimen, the Court finds that the ALJ's conclusion that Plaintiff's issues were well-managed with medication is supported by substantial

evidence such that it constituted a clear and convincing reason to reject Plaintiff's testimony. Plaintiff's argument that the ALJ ignored portions of her pain management notes in which she reported aggravating factors to include lumbar motion, being in one position for prolonged periods of time, prolonged sitting or standing, lifting, household chores, forward bending, sleeping, or twisting offers a different interpretation of the evidence. This is because the ALJ did in fact consider the records containing those notations, but acknowledged that those records also showed Plaintiff reporting that her medication was keeping her symptoms stable and keeping her functional. (AR 70) (citing AR 2007, 2017, 2034, 2054, 2059). And when the evidence will support more than one rational conclusion, the Court must defer to the ALJ. *See Burch*, 400 F.3d at 679; *Flaten*, 44 F.3d at 1457. The Court is also not convinced by Plaintiff's argument that the ALJ erred in finding that Plaintiff's issues were well managed with medication given Plaintiff's pain management records depicting increased pain starting after January of 2023. (AR 71). This is because the ALJ did reference records following January of 2023. While the ALJ did not always reference the exact records Plaintiff does in her brief, the ALJ noted that Plaintiff reported riding her bike for 20 minutes (AR 2001), not using a prescribed back brace (AR 1995), and declining to proceed with surgery (AR 2192) between February of 2023 and August of 2023. (AR 71). The ALJ also referenced other records from this time in which Plaintiff presented at appointments with no apparent distress with a normal gait. (AR 71). Ultimately, the evidence could support more than one rational conclusion and therefore, the Court must defer to the ALJ. So, the Court does not find that the ALJ erred in finding that the fact Plaintiff's issues were well-managed with medication was a reason to reject her testimony.

Turning to Plaintiff's treatment for her lumbar pain, the Court does not find that the ALJ ignored Plaintiff's lumbar treatment in concluding that Plaintiff's issues were well-managed with medication. Indeed, the ALJ referenced a May 27, 2023, note in which Plaintiff reported a 30%-40% benefit with her bilateral lumbar radiofrequency, with which results she was pleased. (AR 71) (citing AR 1979). And the ALJ also referenced a note in which Plaintiff returned to pain management in August of 2023, reporting that she continued to have low back pain. (AR 71); (AR 2194). The ALJ also acknowledged that on September 12, 2023, Plaintiff's pain

management doctor noted that they would discuss repeat lumbar procedures at Plaintiff's next visit.  (AR 71) (citing AR 2192).  So, while the ALJ did not discuss Plaintiff's lumbar treatments in as much detail as Plaintiff does, the Court does not find that the ALJ ignored this treatment or ignored the fact that Plaintiff experienced pain even afterwards.  To the contrary, the ALJ acknowledged these facts, but also noted that the record showed Plaintiff having a normal straight leg test, normal sensation and strength, could ride a bike, and was recommended to do a home exercise program.  (AR 71, 73); (AR 2188-2192) (September 12, 2023, note indicating that Plaintiff's pain management doctor would discuss repeat lumbar procedures but also indicating that Plaintiff had a normal straight leg test, normal strength, and normal sensation); (AR 2001) (February 21, 2023, note indicating that Plaintiff reported increased pain with prolonged standing, but also reported that she could ride a bike for twenty minutes and indicating that her doctor recommended Plaintiff begin a home exercise program).  Because the evidence could support more than one rational conclusion, the Court finds that the ALJ did not err in finding that Plaintiff's lumbar issues were well managed with treatment such that the evidence undermined her testimony.

The Court grants Plaintiff's motion in regard to her argument regarding her neck symptoms.  The Court remands the issue to the ALJ to consider records Plaintiff submitted to the Appeals Council that post-date the ALJ's decision, which records appear inconsistent with the ALJ's statement that Plaintiff's neck symptoms responded well to surgical intervention.

    *C.*       ***Whether the ALJ erred by rejecting Plaintiff's testimony based on Plaintiff's treatment and reporting during treatment.***

Plaintiff argues that the ALJ erred in rejecting Plaintiff's testimony because her "treatment and her reporting in this treatment are not consistent with debilitating limitations."  (ECF No. 10 at 13).  Plaintiff asserts that, although the ALJ highlighted that Plaintiff reported "good relief" from Botox injections for her migraines, she still experienced four to five headache days per month as of February of 2023.  (*Id.*).  While that was better than her previous, thirty headache days per month, Plaintiff argues that the ALJ failed to acknowledge that she is still not functional while experiencing four to five days of migraine headaches per month.  (*Id.*).  This is based on

Plaintiff's testimony that when she has a migraine, she has to take medication, lie down in a dark room, and rest with an ice pack on her head, which Plaintiff argues directs the conclusion that she cannot work during those days. (*Id.*). And the vocational expert at Plaintiff's hearing also testified that more than one absence per month would make an individual unemployable. (*Id.*).

Plaintiff also argues that, although the ALJ found that Plaintiff did not present in distress at her examinations, which is inconsistent with any sitting limitation, the ALJ failed to acknowledge evidence that is consistent with a sitting limitation. (*Id.* at 14). Plaintiff points to records in which she reported that prolonged sitting aggravates her lumbar pain and records in which her doctor documented lumbar abnormalities on physical examination between December of 2021 through September of 2023. (*Id.*). Plaintiff also argues that the ALJ's reference to the fact that Plaintiff had told her doctor that she would do anything to avoid surgery on her lumbar spine does not mean that her treatment was not aggressive. (*Id.*). To the contrary, Plaintiff underwent bilateral radiofrequency denervation and facet blocks to her lumbar spine. (*Id.*). And the doctor who recommended surgery only stated that Plaintiff "may" benefit from surgery, not that she would. (*Id.*). Plaintiff also points out that the recommended surgery was only proposed for her L5-S1 vertebrae and so, would not have benefited the other vertebrae—L3-4 and L4-5— on which Plaintiff has also received radiofrequency denervation or facet blocks. (*Id.* at 15). Plaintiff adds that the ALJ ignored that, after her doctor noted that Plaintiff did not want surgery on her lumbar spine, her doctor also noted that Plaintiff previously had cervical surgery with "adjacent segment breakdown" and that Plaintiff testified that she was afraid to have lumbar surgery because she was still in pain after her cervical surgeries. (*Id.*). Given Plaintiff's aggressive treatment on both her lumbar and cervical spine, Plaintiff asserts that the ALJ's reliance on Plaintiff's treatment cannot qualify as a clear and convincing reason to reject her testimony. (*Id.*).

In response, regarding Plaintiff's migraines, the Commissioner points out that Plaintiff reported relief from her headaches with Botox injections. (ECF No. 12 at 6). While Plaintiff claims that she did not achieve sufficient pain reduction, the Commissioner argues that Plaintiff's reports to her doctors—that she had headaches four to five times per month and no more daily

headaches—were inconsistent with Plaintiff's testimony that she had daily headaches lasting from thirty to forty minutes. (*Id.* at 7). The Commissioner asserts that this inconsistency was a valid basis for the ALJ to reject Plaintiff's testimony. (*Id.*). Regarding the ALJ's reliance on the fact that Plaintiff did not appear in distress at her appointments, the Commissioner argues that the ALJ properly relied on Plaintiff's ability to sit during examinations without distress to be inconsistent with her testimony that she could only sit for five to ten minutes. (*Id.* at 7). The Commissioner adds that Plaintiff's doctors also consistently described Plaintiff as having no acute distress, which the ALJ noted and relied upon to contradict Plaintiff's allegations. (*Id.* at 7-8). Regarding Plaintiff's declination of lumbar surgery, the Commissioner asserts that the ALJ did not err in considering this to mean that Plaintiff responded well to other treatment. (*Id.* at 6).

In reply, regarding her migraines, Plaintiff asserts that her reduction in migraines is not inconsistent with her testimony that she had daily headaches. (ECF No. 13 at 6). Plaintiff distinguishes her headaches from her migraines and points out that although she testified that she has daily headaches, she did not claim that they stopped her from working. (*Id.* at 6-7). Instead, Plaintiff reported that her *migraines*, of which she has at least a few times each month, impact her functioning. (*Id.*). So, Plaintiff asserts that the ALJ failed to address Plaintiff's testimony about her migraines, which require her to take medication, lie down, and rest with an ice pack on her head. (*Id.*). Plaintiff argues that this evidence is significant because it shows that Plaintiff would miss more than one day of work per month and be, according to the vocational expert, unemployable. (*Id.*). Regarding her lack of distress during office visits, Plaintiff argues in reply that her ability to sit for brief, structured medical appointments does not contradict her testimony that she could only sit for ten to fifteen minutes because most appointments are shorter than that. (*Id.* at 7-8).

Here, the Court finds Plaintiff's arguments regarding her migraines persuasive, but does not find her arguments regarding her appearance at appointments to be persuasive. The Court finds Plaintiff's treatment for her migraines was not a clear and convincing reason to reject her testimony. So, the Court grants Plaintiff's motion on that basis and remands for the ALJ to consider Plaintiff's distinction between her headaches and her migraines.

Turning first to Plaintiff's migraines, the Court finds that the ALJ did not provide specific clear and convincing reasons for discounting Plaintiff's testimony.  Plaintiff provided the following testimony at her hearing:

> I have daily headaches that last anywhere from 30 to 40 minutes. When I wake up in the morning, I take medication for them on the onset.  I have major migraine headaches at least three to four times out of the month, and they require me taking medication and laying down in a dark, a dark room, no TV, I just have to rest ice pack on my head. [sic] There's just communication with family, friends or anybody, [sic] and these can last up to three to four times at a time [sic].  It would last three to four days for them, me to get relief.

(AR 399).

Plaintiff's records also corroborate Plaintiff's testimony that she still has migraines three to four times each month.  (AR 1239 – 14F/10) (report dated Jan 30, 2021, explaining that Plaintiff "reports headaches have improved occurring up to four times per week lasting up to 45 minutes with medication.  Daily headaches have resolved."); (AR 1233 – 14F/4) (report dated Aug 10, 2022, explaining that Plaintiff "reports headaches have worsened in intensity, but not frequency.  Headaches still occurring four times per week lasting up to 45 minutes with medication.  Daily headaches have resolved."); (AR 1355 – 16F/2) (report dated Jan 13, 2023, explaining that Plaintiff "reports of 30 headache days per month prior to starting Botox, and afterwards she has 4-5 headache days per month"); (AR 1701) (Plaintiff's doctor stating on February 15, 2023. that "[s]he reports of 30 headache days per month prior to starting Botox, and afterwards she has 4-5 headache days per month").

In addressing Plaintiff's migraines, the ALJ did not mention Plaintiff's testimony that she has four or five debilitating migraines per month.  And the ALJ only noted that Plaintiff obtained "good relief from Botox," without addressing her residual migraines.  (AR 70-72).  Because the ALJ did not address Plaintiff's testimony regarding her migraine days, the Court cannot find that the ALJ gave clear and convincing reasons for rejecting that testimony.  And this error is not harmless because, as Plaintiff points out, the vocational expert explained that a person  "missing 2 or more days a month consistently…would be unemployable in the national economy."  (AR

689).  The Court therefore grants Plaintiff's motion on this issue and remands the issue to the ALJ to consider Plaintiff's distinction in her testimony between her migraines and her headaches.

Turning next to Plaintiff's appearance at her appointments and her lumbar treatment, the Court does not find that the ALJ erred in rejecting Plaintiff's testimony on this basis.  Plaintiff's reference to evidence that she claims supports a sitting limitation does not detract from the fact that the ALJ relied on records that do not support a sitting limitation, including Plaintiff's negative straight leg tests, ability to ride a bike, and examinations showing that she does not present in any distress.  (AR 73).  Instead, it demonstrates that the record could support more than one rational interpretation.  Plaintiff's argument that the ALJ erred in noting that Plaintiff declined to pursue surgery on her lumbar spine in analyzing her testimony is also not persuasive.  The ALJ did not use Plaintiff's declination of surgery as the sole basis to reject Plaintiff's testimony or to discount the extent of Plaintiff's lumbar treatment.  Instead, the ALJ simply mentioned that Dr. Coppel "noted that the claimant will do anything possible to avoid surgery" and "noted that the claimant did not want to pursue surgery on her lower spine."  (AR 70-71).  The ALJ then later referenced various records—including records showing that Plaintiff presented for medication refills for her lower back and had some additional relief from denervations—in finding that Plaintiff was not as limited as she had testified.  (AR 73).

Finally, the Court is not persuaded by Plaintiff's argument that her ability to sit at doctors' appointments is not inconsistent with her testimony that she can only sit for ten or fifteen minutes at a time because most appointments are shorter than that.  It was not unreasonable for the ALJ to conclude that the fact that Plaintiff did not present in any distress at the majority of her examinations is inconsistent with a sitting limitation.  (AR 73).  Indeed, attending medical appointments often involves sitting for varying lengths of time and it is reasonable to assume that some of Plaintiff's medical appointments could have lasted longer than ten to fifteen minutes.  The fact that Plaintiff did not appear in distress at the majority of her examinations was thus a reasonable basis to reject Plaintiff's testimony that she could not sit for longer than ten to fifteen minutes without getting up or lying down.

The Court denies Plaintiff's motion regarding her argument that the ALJ erred by relying on her report and appearance at appointments to reject her testimony.  However, the Court finds Plaintiff's treatment for her migraines was not a clear and convincing reason to reject her testimony.  So, the Court grants Plaintiff's motion on that basis and remands for the ALJ to consider Plaintiff's distinction between her headaches and her migraines.

### D.    Whether the ALJ correctly rejected Plaintiff's testimony based on Plaintiff's activities of daily living.

Plaintiff argues that the ALJ failed to explain how her activities of daily living were actually inconsistent with her testimony.  (ECF No. 10 at 15-16).  Plaintiff points out that her activities include the ability to drive, to prepare her own meals, to complete household chores like laundry and dishes, to grocery shop, and to ride a bike.  (*Id.*).  But Plaintiff argues that these activities square with her testimony that she could not walk or stand for more than ten to fifteen minutes at a time, that she could not lift more than ten pounds, that she cannot look at a computer for more than two to three hours in an eight hour day without alternating looking and not looking at the screen every fifteen minutes, and her need to take multiple breaks throughout the day and lie down.  (*Id.*).   Plaintiff argues that the ALJ failed to consider the limited ways in which she actually performs these activities, like only driving on certain streets, preparing very simple meals, requiring assistance with chores, and riding an electrical cart at the grocery store.  (*Id.*).  Regarding her bike riding, Plaintiff argues that her report to her doctor that she could not ride a bike longer than twenty minutes is not inconsistent with her testimony that she could not sit for longer than ten to fifteen minutes.  (*Id.* at 16-17).

The Commissioner responds and argues that Plaintiff activities are indeed inconsistent with her allegations.  (ECF No. 12 at 4-5).  Regarding Plaintiff's activities, the Commissioner argues that Plaintiff's ability to complete the activities she does is inconsistent with her allegations of extreme limitations.  (*Id.*).  The Commissioner asserts that once the ALJ properly discounted Plaintiff's subjective testimony, the ALJ was not further required to include in her list of Plaintiff's activities all the caveats regarding how Plaintiff performs them.  (*Id.*).  Regarding Plaintiff's bike riding, the Commissioner points out that Plaintiff alleged that sitting for ten to

fifteen minutes required her to stand up and move around before laying down and that Plaintiff could only stand for the same length of time. (*Id.*). But, the Commissioner contrasts, it was not until February of 2023 that Plaintiff admitted to her provider that she had recently experienced an increased and different type of pain that made her unable to ride her bike for longer than twenty minutes without having to get off and sit down. (*Id.*). The Commissioner also points out that Plaintiff admitted to her provider that she could usually tolerate riding her bike, which means that she could do so in the year between her alleged disability onset date and her provider's report. (*Id.*). The Commissioner also asserts that being able to sit for twenty minutes on a bike is plainly inconsistent with Plaintiff's alleged inability to be able to sit for fifteen minutes. (*Id.*).

In reply, regarding her activities, Plaintiff asserts that the ALJ did in fact err by not discussing Plaintiff's caveats regarding how she performed her activities because the manner in which she performed them was consistent with her testimony. (ECF No. 13 at 4-5). Plaintiff acknowledges that the ALJ need not mention all of Plaintiff's caveats accompanying her description of her activities, but only if elsewhere in the decision the ALJ properly discounted Plaintiff's subjective testimony. (*Id.*). Regarding her bike riding, Plaintiff argues that the Commissioner's argument misunderstands the nature of bike riding, which is mechanically different than sitting, standing, or walking. (*Id.*). Plaintiff points out that the fact that she experienced relief by sitting after riding her bike supports the conclusion that cycling did not impose the same strain on her back as sitting or other weightbearing activities. (*Id.*). Plaintiff asserts that riding a bike allows her to offload her weight onto the pedals and handlebars, intermittently rise from seat, and engage her leg and core muscles to share the load, all of which prolongs the steady buildup of pressure that triggers her back pain. (*Id.*).

Here, the Court finds neither of Plaintiff's arguments persuasive. Regarding Plaintiff's activities of daily living, as an initial matter, it is not clear that the ALJ relied on Plaintiff's activities of daily living as a basis to reject Plaintiff's testimony. This is because, the ALJ wrote that "[c]onsistent with the evidence that indicates pain but also pain relief given presentations for refills with some additional relief from denervations and the claimant's reporting as to the effectiveness of [B]otox and her neck surgery, the claimant reportedly has the ability to drive,

prepare her own meals, complete household chores including laundry and dishes, grocery shop, and to ride a bike." (AR 73). So, it does not appear that the ALJ relied on inconsistencies between Plaintiff's activities of daily living and her testimony as a basis to reject her testimony. Instead, and as Plaintiff also states in her brief, the ALJ found that Plaintiff's treatment was effective enough to allow her to perform her activities of daily living. Because Plaintiff does not argue that the ALJ erred in drawing this conclusion—only that the ALJ erred in discounting Plaintiff's testimony—the Court denies Plaintiff's motion on this ground.

Turning next to Plaintiff's bike riding, the ALJ did find that Plaintiff's ability to ride her bike was inconsistent with Plaintiff's reported difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks, which activities she reported exacerbated her neck and back pain. (AR 73) (stating that "although the claimant reports difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks…which she says exacerbates her neck and back pain, she also reported to her treatment provider in February 2023 that bike riding is something she can usually tolerate, but that lately she had only been able to ride for 20 minutes before needing to rest due to back pain"). Although Plaintiff agues that riding a bike cannot contradict her testimony because riding a bike puts different pressure on her body than other movements, Plaintiff's bike riding was a rational basis for the ALJ to find that Plaintiff's symptoms were not as severe as alleged. And indeed, the clear and convincing standard "isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Because Plaintiff's ability to ride a bike is at least partially inconsistent with her claim that she has difficulty with nearly all movements, the Courts finds that it was a clear and convincing basis for the ALJ to reject her testimony. The Court therefore denies Plaintiff's motion on this basis.

///

///

///

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal and remand (ECF No. 10) is **granted in part and denied in part.** It is granted in part because the ALJ erred in providing the following reasons for rejecting Plaintiff's symptom testimony, which reasons are not clear and convincing: (1) that Plaintiff's neck symptoms responded well to surgical intervention; and (2) that Plaintiff's treatment for her migraines was effective. It is denied in all other respects.

**IT IS FURTHER ORDERED** that this matter is remanded for further proceedings so that the ALJ may provide specific, clear and convincing reasons for rejecting Plaintiff's testimony regarding: (1) her neck symptoms and their response to surgical intervention considering Plaintiff's records dated September 13, 2024, and October 1, 2024 (AR 108-110); and (2) her migraines and their impact on her functioning.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: June 16, 2026,

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE